992 A.2d 762

CITY OF ATLANTIC CITY, PLAINTIFF–RESPONDENT, v. ZACHI-
RIAS TRUPOS, ET AL., DEFENDANTS–APPELLANTS, AND
THE ATLANTIC COUNTY BOARD OF TAXATION, NOMINAL-
LY AND AS A PARTY IN INTEREST.

IN RE MILLER GALLAGHER & GRIMLEY.

Argued January 6, 2010—Decided April 26, 2010.

448

*Stephen F. Funk* argued the cause for appellants (*Jacobs & Barbone,* attorneys).

*George G. Frino* argued the cause for respondent (*DeCotiis, FitzPatrick, Cole & Wisler,* attorneys; *Mr. Frino, Steven C. Mannion,* and *James L. Esposito,* on the brief).

*John C. Gillespie* submitted a brief on behalf of amicus curiae New Jersey Institute of Local Government Attorneys (*Parker McCay,* attorneys; *Mr. Gillespie* and *Brian M. Guest,* of counsel; *Mr. Gillespie, Mr. Guest,* and *Grant G. Berger,* on the brief).

Justice RIVERA–SOTO delivered the opinion of the Court.

In the shifting of allegiances that arises when lawyers "change sides" in their representation of new clients, the confidences of

prior clients must be preserved. The propriety of a lawyer representing a current client adverse to the interests of a former client generates a tension—between fealty to a former client and zealousness in favor of a current client—that this Court must address.

In this appeal, a law firm representing a municipality in certain real estate tax appeals matters discontinued that representation. Later, a number of taxpayers retained the law firm to appeal the real estate tax assessments imposed by the municipality. Asserting that the law firm was privy to the municipality's confidences and that the law firm's representation of individual taxpayers was "substantially related" to the law firm's prior representation of the municipality, the municipality moved to disqualify the law firm from representing the individual taxpayers against the municipality. In a published decision, the Tax Court granted the municipality's motion; it later denied the law firm's separate motion to stay its disqualification. On an emergent application by the law firm, the Appellate Division (1) granted leave to appeal the Tax Court's interlocutory order; (2) denied the law firm's application for a stay pending the appeal; (3) denied the law firm's application to supplement the record; and (4) summarily affirmed the decision of the Tax Court substantially for the reasons contained in the Tax Court's written opinion. This appeal followed.

*RPC* 1.9(a) plainly provides that "[a] lawyer who has represented a client in a matter shall not thereafter represent another client in the same or substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client gives informed consent confirmed in writing." Also, *RPC* 1.9(d) states that "[a] public entity cannot consent to a representation otherwise prohibited by this *Rule*." Thus, the question on appeal is whether the law firm's representation of individual taxpayers in real estate tax appeals involves "substantially related matter[s] in which [the taxpayers'] interests are materially adverse to the interests of the [municipality.]" We hold that, for purposes of *RPC* 1.9, matters are deemed to be

"substantially related" if (1) the lawyer for whom disqualification is sought received confidential information from the former client that can be used against that client in the subsequent representation of parties adverse to the former client, or (2) facts relevant to the prior representation are both relevant and material to the subsequent representation. Applying that standard to the circumstances presented here, we conclude that the individual property owners' real estate tax appeals are not substantially related to the law firm's earlier terminated representation of the municipality. Therefore, the order disqualifying the law firm was in error and must be reversed.

I.

During 2004 and 2005, Daniel Gallagher, Esq. of Miller, Gallagher & Grimley (the law firm) served as Legislative Counsel for the City Council of plaintiff, the City of Atlantic City.[1] In 2006, he resigned from that post and was retained by plaintiff "to represent and advise [plaintiff] in all matters assigned by the City Solicitor, including but not limited to matters in the areas of Tax Appeals." During 2006 and 2007, the law firm represented plaintiff in a number of real estate tax appeals based on admittedly dated assessments; plaintiff's failure to revalue the real estate within its municipal boundaries was the subject of litigation, culminating in a November 29, 2005 Tax Court order "compel[ling plaintiff] to solicit bids for the implementation of a [c]ity wide revaluation of property tax assessments." Hence, as part of the law firm's representation of plaintiff, the law firm served as one of the non-voting consultants to a committee charged with implementing that

[1] In 2004 and 2005, the law firm was known as "Miller & Gallagher." It later became "Miller, Gallagher & Grimley." For ease of reference, we use the name by which the law firm is presently known. Also, because Gallagher's disqualification would also disqualify his law firm, see RPC 1.10(a) (providing that "[w]hen lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by RPC ... 1.9"), we include Gallagher individually as encompassed within the term "law firm."

court-ordered city-wide revaluation of real estate tax assessments.[2] In that capacity, Gallagher attended—but seemingly did not participate in—meetings of the committee, where the committee discussed the retention of appraisers in respect of the 2007 and 2008 revaluation of both non-casino owned/operated property and casino owned/operated property. Ultimately, on or about February 17, 2006, Certified Valuations, Inc. (CVI) was selected as plaintiff's revaluation company, but only for the 2008 revaluation of both non-casino owned/operated property and casino owned/operated property; the committee determined to forego a revaluation for 2007 in respect of both casino and non-casino property.[3]

More to the point, the minutes of the committee's meetings do not reflect that Gallagher did anything other than attend the meeting, as Gallagher's and the law firm's representation of plaintiff during that period was limited to "tax appeals involving casinos and large commercial properties[.]" Specifically, although the Tax Court found that "[a]ll of the 2009 assessments were a carryover or were otherwise derived from the 2008 revaluation and therefore represented a clean break from the 2006 and 2007 assessments[,]" and although the law firm had represented plaintiff "in connection with resisting the court ordered revaluation and subsequently finding and hiring the revaluation firm that conducted the revaluation, it had absolutely no role in setting the revaluation assessments." *City of Atlantic City v. Trupos,* 25 *N.J.Tax*

---

[2] The committee consisted exclusively of elected and appointed municipal officials: three councilmen, the city solicitor, the city's tax assessor and the city's assistant business administrator. Two lawyers, including Gallagher, served as "Committee Consultants (non-voting)."

[3] The committee selected CVI over another bidder for the 2008 revaluation of non-casino property based on its evaluation of the responses received to plaintiff's requests for proposal and due to "the experience listed for CVI personnel and company, its 2008 bid price relative to the other bidder, the number and experience of its New Jersey Certified staff and the complexity of its recent revaluation projects, such as the revaluation of the City of Newark." By comparison, CVI was selected to perform the 2008 revaluation of casino property by default: the other two bidders were disqualified.

108, 110–11 (Tax 2009). Furthermore, as the Tax Court also found, "[t]he municipal expert appraiser that worked with [the law firm] in defending the 2006 and 2007 assessments was Mr. Steinhardt[, while t]he municipal expert appraisers ... defending the 2008 and 2009 assessments are Mr. Lamicella, a principal of [CVI] which conducted the revaluation, and its employees." *Id.* at 111. Based on a review of the invoices contained in the record, it appears that, save for specific casino and casino-related tax appeals that may have continued until April 2009, the law firm ceased the bulk of its representation of plaintiff as of March 1, 2008.

Thereafter, the law firm was retained to "represent[ ] several hundred taxpayers [4] who have filed petitions with the Atlantic County Board of Taxation ("the Board") challenging their 2009 assessments." *Id.* at 109. Plaintiff sought to disqualify the law firm before the Board, which "declined to rule on the challenge, finding it had no jurisdiction over the issue." *Ibid.* Plaintiff then sought an order to show cause from the Tax Court, returnable on July 31, 2009. Based on its evaluation of the proofs before it and the legal conclusions it reached, the Tax Court ruled from the bench that the law firm was "precluded from representing taxpayers in tax appeals adverse to [plaintiff]." It ruled "from the bench at this time because people will need to know what to do next and they only have until the end of September to resolve some of these matters." [5] It noted its intent to "supplement and amplify this opinion in something to be written as quickly as possible." With

---

[4] The record is less than precise as to the exact number of taxpayers who retained the law firm to prosecute 2009 tax appeals; the reported figure varies between 198 and approximately 250.

[5] In fact, at the request of the Board, by a letter dated August 18, 2009, the acting director of the Division of Taxation, granted the Board a fifteen-day "extension of time to October 15, 2009" within which the Board was "to hear and determine tax appeals in 2009." *See N.J.S.A.* 54:3–26.1 (permitting county board of taxation to request, and authorizing director of Division of Taxation to grant, "extension of time within which the appeal or appeals may be heard and determined").

the consent of the parties and in order to provide for a more meaningful appellate review, the Tax Court deferred issuing its order until it issued its promised written opinion.

Four days later, on August 4, 2009, the Tax Court ordered that the law firm "shall not represent Atlantic City taxpayers in those taxpayers' challenges to 2009 Atlantic City assessments[;]" that "[i]n each of the matters in which [the law firm] filed a 2009 Atlantic City tax appeal, it shall file a substitution of attorney, either to another attorney or to the *pro se* taxpayer by August 20, 2009[;]" and that the law firm "shall notify each of their clients affected by this order forthwith so that the clients have adequate time to secure representation in these matters before the [Board]'s authority to hear challenges to 2009 Atlantic City tax assessments expires on September 30, 2009."

Together with that order, the Tax Court issued its written opinion. *City of Atlantic City, supra,* 25 *N.J. Tax* at 108. After discussing the operative facts, the Tax Court noted that "[t]he issues raised in this matter are governed by *R.P.C.* 1.9." *Id.* at 112. Reviewing the provisions of *RPC* 1.9(a) and (d), it explained that

> three elements are necessary in order to create a conflict of interest under *R.P.C.* 1.9(a): (1) a former client whom the lawyer represented in a matter; (2) a current client whose interests are materially adverse to those of the former client; and (3) a current matter that is the same as or substantially related to the matter in which the lawyer represented the former client.
>
> [*Id.* at 113.]

The Tax Court further noted that,

> [i]n addition to *R.P.C.* 1.9(a), a lawyer is precluded from knowingly representing a client whose interests are materially adverse to a person: (1) who previously had been represented by the lawyer's former firm in the same or a substantially related matter; and (2) about whom the lawyer had personally acquired material confidential information while employed at the former firm.
>
> [*Ibid.*]

It stated the issue presented as follows: "whether [the] current and former matters are substantially related so that [the law firm] would be disqualified from representation of its current clients against its former client, [plaintiff], under *R.P.C.* 1.9(a)." *Ibid.*

The court reasoned that

current and former matters would be found to be substantially related if: a lawyer was involved in a transaction which provides a cause of action in a current client's matter during the lawyer's prior representation of a former client who is now an adverse party to the current client; there is a long-term relationship between a lawyer and his/her former client enabling him/her to acquire knowledge of the client's internal policies and litigation strategies; and a past and a present case involve similar legal issues.

[*Id.* at 113–14 (footnotes omitted).]

After canvassing the factual settings and legal conclusions of several reported opinions, the Tax Court concluded that the discussions held between the law firm and plaintiff's tax assessor could not serve as the basis for disqualification, reasoning that "an attorney's relationship with the assessor is not protected by the attorney-client privilege because the assessor is an independent state officer." *Id.* at 116 (citation omitted). In contrast, it noted that "[t]he relationship between the assessor and the municipal attorney, as is the relationship between the Mayor and Council and the municipal attorney, *is* protected by the attorney-client privilege." *Ibid.* (emphasis supplied; citation omitted).

Concluding that the law firm "is not simultaneously representing [plaintiff] and its adversaries" and "[n]or is [plaintiff]'s former attorney representing former adversaries in the same matters it handled for [plaintiff,]" *id.* at 117 (citations omitted), the Tax Court instead zeroed in on a concession at oral argument that "most appeals of tax assessments are resolved by settlement." *Id.* at 116. Explaining that, "[b]y statute and decided case law, [the authority to settle a tax appeal] resides in the Mayor and Council[,]" *id.* at 117 (citations omitted), the Tax Court focused on the information the law firm *may* have acquired in the settlement process that could be used against its former client. Acknowledging that the law firm "settled only one case before the Tax Court during its 2006–2007 representation of [plaintiff,]" *ibid.*, the Tax Court surmised—without the benefit of any record proof—that "[n]evertheless, it must have had the opportunity to discuss settlement parameters and litigation strategy with the Mayor and Council and the assessor." *Ibid.* Based on that unfounded sur-

mise, the court then reasoned that "[t]hat knowledge alone, even if not consciously used, will give [the law firm] insight into the thought process of its 2008 and 2009 adversary acquired during its 2006 and 2007 representation of that client." *Ibid.* It rejected a more nuanced analysis by declaring that "[t]he fact that the current matters are 'different' (different taxpayers, different years, different supporting municipal experts) is of no legal significance." *Ibid.*

Despite this Court previously having determined that "the *Reardon[v. Marlayne, Inc.,* 83 *N.J.* 460, 416 *A.*2d 852 (1980) ] three-part test [for determining the disqualification of counsel appearing adverse to a former client] no longer controls[,]" *Dewey v. R.J. Reynolds Tobacco Co.,* 109 *N.J.* 201, 212, 536 *A.*2d 243 (1988), the Tax Court nonetheless concluded that "the best formulation of the test remains that prescribed in *Reardon*[.]" *City of Atlantic City, supra,* 25 *N.J. Tax* at 119.[6] It thus found that the law firm's

> representation of [plaintiff] in 2006 and 2007 was substantially related to the representation of taxpayers adverse to [plaintiff] in 2009. The fact that the matters are not identical is outweighed by the fact that all matters deal with tax assessments in which the issue is the value of real estate. The fact that different experts will be defending [plaintiff] in 2009 from those who defended [plaintiff] in 2007 and 2006 is outweighed by the fact that the assessor is the same person and the Mayor and Council are performing the same functions, defending [plaintiff]'s assessments, as the prior Mayors and Councils of [plaintiff].
> [*Ibid.*]

The Tax Court added that

> [t]he likelihood that [the law firm] was privy to relevant confidences of the Assessor and Mayor and Council with respect to the issues involved which will be

---

[6] Although it has been noted that "[t]he Debevoise Committee's comments while *RPC* 1.9 was under consideration [that is, the Report of the New Jersey Supreme Court Committee on the Model Rules of Professional Conduct] indicate that the rule was intended to incorporate the 'substantial relationship' aspect of the *Reardon* test[,]" Kevin H. Michels, *New Jersey Attorney Ethics: The Law of New Jersey Lawyering* 525 (2010), that comment fails to acknowledge that this Court decided *Dewey*—limiting *Reardon's* effect—in 1988, almost five years *after* it had received and acted on the Debevoise Committee's recommendations. Seemingly influenced thereby, the Tax Court similarly overlooks *Dewey's* rejection of *Reardon's* continued relevance.

useful to the 2009 taxpayers and can be used against the Assessor and Mayor and Council in 2009 is so great that the lawyers must be barred from switching sides in these cases. To rule otherwise would do violence to the confidence and loyalty that the City and Assessor had a right to expect when they hired [the law firm] to represent them in the defense of challenges to 2006 and 2007 tax assessments.

[*Id.* at 120.]

It therefore ruled that the law firm "may not represent taxpayers who challenge their tax assessments by [plaintiff] for the tax year 2009." *Ibid.*

In a letter opinion and order dated August 20, 2009, the Tax Court denied the law firm's motion to stay its August 4, 2009 order, declaring it to be a "determination . . . more appropriately made in conjunction with the Appellate Division's decision to grant or deny the motion for leave to appeal." It did, however, "urge the Appellate Division to grant the [law firm's] motion" for leave to appeal. The court therefore "(1) [r]efuse[d] to grant the stay[;] (2) [r]ecommend[ed] that the Appellate Division grant the motion for leave to take an interlocutory appeal and rule on the stay [; and] (3) [r]ecommend[ed] that the motion to supplement the record . . . be denied."

The law firm sought leave to appeal the Tax Court's interlocutory order. By an order on emergent application dated August 26, 2009, the Appellate Division granted leave to appeal, but it denied the law firm's separate applications for a stay pending the appeal and to supplement the record, and it summarily affirmed the decision of the Tax Court "substantially for the reasons set forth in Judge Small's written decision of August 4, 2009, as amplified by his supplemental letter opinion of August 20, 2009." It added that it

d[id] not read the opinions as permanently barring [the law firm] from handling tax appeals in Atlantic City. The opinions and this appeal solely concern the 2009 tax appeals now pending. The confidentiality concerns precluding [the law firm]'s representation in the 2009 tax appeals may be expected to dissipate over time. *See* Kevin H. Michels, *New Jersey Attorney Ethics* §§ 21:4 at 534, 21:7–2 at 550 (2009) (noting that the Court in *Reardon v. Marlayne, Inc.,* 83 *N.J.* 460, 476, 416 *A.*2d 852 (1980), "recognized that there may be a point when a sufficient amount of time has passed to render the prior attorney-client relationship insignificant for purposes of

conflict analysis" but "held a two-year gap between the representations at issue insufficient when there was a strong similarity between the cases").

Shortly thereafter, the law firm sought and was granted a stay of the Appellate Division's judgment by order of a single Justice. *See R.* 2:9–5(b) (providing that "[t]he grant or denial of a stay by the Appellate Division may be reviewed on motion to the Supreme Court on notice to the Appellate Division without taking an appeal to the Supreme Court"); *R.* 2:9–8 (providing that "[w]hen necessary, temporary relief, stays, and emergency orders may be granted, with or without notice, by a single Justice of the Supreme Court"). The Court then granted the law firm's motion for leave to appeal, *City of Atlantic City v. Trupos,* 200 *N.J.* 363, 981 *A.*2d 1276 (2009), and continued the stay. Leave to appear as amicus curiae also was granted to the New Jersey Institute of Local Government Attorneys (NJILGA).

For the reasons that follow, we reverse the judgment of the Appellate Division and vacate the order of the Tax Court disqualifying the law firm from representing Atlantic City taxpayers in connection with their 2009 tax appeals.

## II.

Although asserting policy arguments to the effect that disqualification of counsel deprives clients of the lawyer of their choosing, the law firm advances one principal argument with two component parts. According to the law firm, the matters in which it previously represented plaintiff during 2006–2007 are not "substantially related" to the 2009 tax appeals and, therefore, no disqualification should have issued. In tandem, the law firm asserts that there was an insufficient factual record developed before the Tax Court upon which to base any disqualification conclusion.

Conversely, plaintiff asserts that the law firm's representation of plaintiff in 2006–2007 matters and its representation of taxpayers in the 2009 tax appeals against plaintiff are "substantially related." Pointing to a large cache of invoices issued by the law

firm to plaintiff, it argues that disqualification is mandated under *RPC* 1.9(a).

Amicus NJILGA argues that, reviewing the Tax Court's legal conclusions de novo, the lower court's preference for the *Reardon* test was in error, as that test had been abandoned in *Dewey*. Amicus asserts that the proper test is set forth in *RPC* 1.9(a) and that it cannot be said that the law firm's representation of plaintiff in 2006–2007 and its representation of taxpayers in the 2009 tax appeals are "substantially related." It urges that, in determining conflicts involving successive representations, such as the one alleged here, the Court adopt a balancing test that "weigh[s] the need to maintain the highest standards of the profession against a client's right freely to choose his counsel." In that weighing, amicus states that one must "emphasize the quantity and quality of information actually obtained by an attorney in [his or her] representation of a government entity." It also urges the adoption of a time limitation on any applications for disqualification under *RPC* 1.9.[7]

## III.

### A.

The cornerstone issue in this appeal is narrow: whether the law firm's representation of plaintiff in defense of tax appeals during

---

[7] The pleadings in this case also name the Atlantic County Board of Taxation (Board) "nominally and as a party in interest." Before both the Appellate Division and this Court, the Board took "no position in this litigation, except to voice its concern that the affected taxpayers with local property tax appeals pending before the [ ] Board have an opportunity to pursue their appeals in that forum." The Board also advised that, "[f]or the convenience of the reviewing courts and parties, the [ ] Board has postponed hearing the approximately 250 affected tax appeals pending appellate review." It noted, however, that "barring an order to the contrary from this Court, the [ ] Board hopes to schedule and hear those tax appeals in early October [2009], for which a minimum 10–day notice to the parties is required under *N.J.A.C.* 18:12A–1.9(b)." On September 1, 2009, this Court granted the law firm's application for an emergent stay "pending further order of the Court[,]" which stay was continued when the law firm's motion for leave to appeal was granted.

2006–2007 is "substantially related" to the law firm's prosecution of individual taxpayers' 2009 tax appeals against plaintiff. Acknowledging that none of the 2009 tax appeals involve any of the properties in respect of which the law firm represented plaintiff in 2006–2007, plaintiff asserts that, because, in the course of its earlier representation of plaintiff, the law firm was privy to the selection of the revaluation expert on whose assessments the 2009 tax appeals are based, the law firm's prosecution of the 2009 tax appeals is "substantially related" to its 2006–2007 representation of plaintiff.[8] We disagree.

We have made clear that "[t]his Court's authority to regulate the legal profession is of constitutional dimension." *In re Sup.Ct. Adv. Comm. on Prof'l Ethics Op. No. 697*, 188 *N.J.* 549, 554, 911 *A.*2d 51 (2006). To that end, " 'th[is] Court adopted the *Rules of Professional Conduct* in an effort to ... provide clear, enforceable standards of behavior for lawyers.' " *Ibid.* (quoting *State v. Rue*, 175 *N.J.* 1, 14, 811 *A.*2d 425 (2002)). Unlike the rules that govern concurrent conflicts of interest, *see RPC* 1.7(a) (prohibiting "representation involv[ing] a concurrent conflict of interest" and defining term), a lawyer's duty to a former client is addressed by *RPC* 1.9.

---

8 Until oral argument in this appeal, plaintiff did not differentiate between the law firm's representation of residential versus commercial properties and, at plaintiff's urging, the Tax Court's order disqualified the law firm from the representation of *any* party prosecuting a 2009 tax appeal against plaintiff. At argument, plaintiff conceded that (1) the sole basis for disqualification was the law firm's claimed participation in the selection of the revaluation company and, hence, knowledge of the revaluation company's methodology of appraisal of commercial properties should be imputed to the law firm; (2) because residential property is valued based on comparable properties—information that is readily and publicly available—no particularized knowledge of valuation for residential properties was imparted in the appraiser evaluation and selection process; and (3) as a result, the order of disqualification properly should have been limited solely to the law firm's prosecution of tax appeals concerning commercial properties. Given our conclusion in respect of the core issue in this appeal, the differences drawn at argument between the law firm's representation of commercial versus residential property owners, while relevant, is of no material consequence.

That *Rule of Professional Conduct* provides the standard for decision in this appeal. It provides straightforwardly that "[a] lawyer who has represented a client in a matter shall not thereafter represent another client in the same or substantially related matter in which that client's interests are materially adverse to the interests of the former client[.]" *RPC* 1.9(a). Its prohibition is triggered when two factors coalesce: the matters between the present and former clients must be "the same or . . . substantially related," and the interests of the present and former clients must be "materially adverse." It is, first, to the procedural and, later, the substantive concerns raised by that discrete question that we now turn.

## B.

The procedure relevant to an application to disqualify counsel under *RPC* 1.9(a) is clear: "a motion for disqualification calls for us to balance competing interests, weighing the need to maintain the highest standards of the profession against a client's right freely to choose his counsel." *Dewey, supra,* 109 *N.J.* at 218, 536 *A.2d* 243 (citations and internal quotation marks omitted). In that balance, courts must consider that "a person's right to retain counsel of his or her choice is limited in that there is no right to demand to be represented by an attorney disqualified because of an ethical requirement." *Ibid.* (citation and internal quotation marks omitted). In the process, the initial burden of production—that the lawyer(s) for whom disqualification is sought formerly represented their present adverse party and that the present litigation is materially adverse to the former client—must be borne by the party seeking disqualification. *Id.* at 221–22, 536 *A.2d* 243 ("In the event a motion is brought to disqualify an attorney because of his or her alleged representation of conflicting interests in the same or substantially related matters, the former client should have the initial burden of proving that by application of *RPC* 1.9 it previously had been represented by the attorney whose disqualification is sought."). If that burden of production

or of going-forward is met, the burden shifts to the attorney(s) sought to be disqualified to demonstrate that the matter or matters in which he or they represented the former client are not the same or substantially related to the controversy in which the disqualification motion is brought. *Avocent Redmond Corp. v. Rose Elecs.*, 491 *F.Supp.*2d 1000, 1007 (W.D.Wash.2007) (holding that "party opposing [attorney]'s disqualification [has] the burden to show that the matters are not substantially related"). That said, the burden of persuasion on all elements under *RPC* 1.9(a) remains with the moving party, as it "bears the burden of proving that disqualification is justified." *N.J. Div. of Youth & Family Servs. v. V.J.*, 386 *N.J.Super.* 71, 75, 898 *A.*2d 1059 (Ch.Div.2004) (internal quotations and citation omitted).

▮▮▮ In practice,

[s]uch a motion should ordinarily be decided on the affidavits and documentary evidence submitted, and an evidentiary hearing should be held only when the court cannot with confidence decide the issue on the basis of the information contained in those papers, as, for instance, when despite that information there remain gaps that must be filled before a factfinder can with a sense of assurance render a determination, or when there looms a question of witness credibility.

[*Dewey, supra*, 109 *N.J.* at 222, 536 *A.*2d 243.]

Further, a determination of whether counsel should be disqualified is, as an issue of law, subject to de novo plenary appellate review. *J.G. Ries & Sons, Inc. v. Spectraserv, Inc.*, 384 *N.J.Super.* 216, 222, 894 *A.*2d 681 (App.Div.2006) (citing *Manalapan Realty, L.P. v. Twp. Comm. of the Twp. of Manalapan*, 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995); *State v. Bruno*, 323 *N.J.Super.* 322, 331–32, 732 *A.*2d 1136 (App.Div.1999)).

## C.

Substantively, in the circumstances presented, the presence of two of the three necessary predicates to the application of *RPC* 1.9(a)'s disqualification bar is not in dispute: the law firm formerly represented plaintiff, and the interests of the law firm's clients in the 2009 tax appeals are materially adverse to plaintiff's interests in those tax appeals. Therefore, the only substantive open ques-

tion remaining in this appeal is whether the 2006–2007 tax appeals—where the law firm represented plaintiff—and the 2009 tax appeals—where the law firm sought to represent taxpayers adverse to plaintiff-are "the same or substantially related matter[s.]"

That inquiry must start from the now well-established principle that whether the matters are the "same or substantially related" must be based in fact, as we have "reject[ed] the appearance of impropriety as a factor to be considered in determining whether a prohibited conflict of interest exists under *RPC* ... 1.9." *In re Sup.Ct. Adv. Comm. on Prof'l Ethics Op. No. 697, supra,* 188 *N.J.* at 562 n. 5, 911 *A.2d* 51. Since the 2004 overhaul of the *Rules of Professional Conduct* where "we eliminated the 'appearance of impropriety' language from the *Rules of Professional Conduct* [,]" *id.* at 562, 911 *A.2d* 51 (citation and internal quotation marks omitted), no reported New Jersey case has spoken directly on what may constitute "substantially related matters" as set forth in *RPC* 1.9(a).[9] Although this Court's cases preceding the 2004 amendments to the *RPC's* have touched on what constitutes "same or substantially related matters," each has been influenced heavily by the now-rejected appearance of impropriety standard. *See*

---

[9] That said, violations of *RPC* 1.9 have served as the basis for the imposition of attorney discipline. *See, e.g., In re Fitchett,* 184 *N.J.* 289, 877 *A.2d* 263 (2005). Also, just before the 2004 amendments to the RPC's were adopted but after the Pollock Commission issued its December 2002 report which served as the basis of the 2004 amendments, *see* Supreme Court of New Jersey, "Administrative Determinations in Response to the Report and Recommendation of the Supreme Court Commission on the Rules of Professional Conduct" (Sep. 10, 2003), *reprinted in N.J. Attorney Ethics, supra,* at 1177, in *State v. Jimenez,* the Court side-stepped defining "substantially related matters." 175 *N.J.* 475, 489, 815 *A.2d* 976 (2003) (stating that, in circumstances presented, "[i]t is not necessary to decide whether [the lawyer for whom disqualification was sought] represented defendant and [witness] in substantially related matters because there is no reasonable basis to conclude that defendant's interests are materially adverse to [the witness]" (footnote omitted)). *See also Camden Iron & Metal, Inc. v. Klehr, Harrison, Harvey, Branzberg & Ellers, LLP,* 384 *N.J.Super.* 172, 894 *A.2d* 94 (App.Div.) (reversing, for want of subject matter jurisdiction, order disqualifying lawyer and law firm under *RPC* 1.9), *certif. denied,* 187 *N.J.* 83, 899 *A.2d* 305 (2006).

*State v. Loyal,* 164 *N.J.* 418, 428–33, 753 *A.*2d 1073 (2000) (collecting cases); *Dewey, supra,* 109 *N.J.* at 211–12, 536 *A.*2d 243 (describing parties' positions); *In re Pet. for Review of Op. No. 569 of Adv. Comm. on Prof'l Ethics,* 103 *N.J.* 325, 329–30, 511 *A.*2d 119 (1986) (describing application of "appearance of impropriety" standard to *RPC* 1.9 analysis).

Given the paucity of authoritative precedent, a representative sampling of how other jurisdictions have defined whether matters are "substantially related" in the attorney disqualification context is instructive. For example, construing Pennsylvania's parallel to our *RPC* 1.9(a) and quoting that state's comments to its professional conduct rules, a federal court noted that matters are " 'substantially related' for purposes of *RPC* 1.9 if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." *United States v. Fumo,* 504 *F.Supp.*2d 6, 28 (E.D.Pa.2007) (citation, internal quotation marks and editing marks omitted). New York's statement of the test is simpler: "whether facts which were necessary to the first representation are necessary to the present litigation." *United States Football League v. Nat'l Football League,* 605 *F.Supp.* 1448, 1459 (S.D.N.Y.1985). Conversely, "there is a substantial relationship between the two representations if facts pertinent to problems for which the original legal services were sought are relevant to the subsequent litigation." *Ibid.*

In a slightly different vein, Washington specifically eschews a requirement for disclosure of confidences to justify disqualification if the matters are "substantially related." *Oxford Sys., Inc. v. CellPro, Inc.,* 45 *F.Supp.*2d 1055, 1061 (W.D.Wash.1999) (holding that "proof of disclosure of confidential information is not necessary if the matters are substantially related") (citation omitted). Instead, "[s]ubstantiality is present if the factual contexts of the two representations are similar or related." *Ibid.* (citation omit-

ted). In that court's view, "the inquiry is limited to whether there is a substantial relationship between the two representations." *Ibid.* For its part, the United States Court of Appeals for the Seventh Circuit has developed a three-part test to determine whether a matter is "substantially related":

First, the trial judge must make a factual reconstruction of the scope of the prior legal representation. Second, it must be determined whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters. Third, it must be determined whether that information is relevant to the issues raised in the litigation pending against the former client.

[*La Salle Nat'l Bank v. County of Lake*, 703 *F*.2d 252, 255–56 (7th Cir.1983) (citations omitted).]

New Jersey's federal courts, applying New Jersey's *Rules of Professional Conduct*, also have weighed in on this point, albeit prior to the 2004 amendments to the *Rules of Professional Conduct*. In *Rohm & Haas Co. v. American Cyanamid Co.*, 187 *F.Supp.*2d 221 (D.N.J.2001), the court noted that "matters are considered substantially related when it can reasonably be said that in the course of the former representation the attorney might have acquired information related to the subject matter of his or her subsequent representation." *Id.* at 228 (citation, internal quotation marks and editing marks omitted). Likewise, in *Home Care Industries v. Murray*, 154 *F.Supp.*2d 861 (D.N.J.2001), the court determined that "a substantial relationship exists and disqualification is mandated where the issues between the former and present suits are practically the same or where there is a patently clear relationship between them." *Id.* at 866 (quoting *Reardon, supra,* 83 *N.J.* at 472, 416 *A.*2d 852; internal quotation marks omitted). Finally, in *Ciba–Geigy Corp. v. Alza Corp.*, 795 *F.Supp.* 711 (D.N.J.1992), the court determined that "matters are substantially related when 'the adversity between the interests of the attorney's former and present clients has created a climate for disclosure of relevant confidential information.'" *Id.* at 716 (quoting *Reardon, supra,* 83 *N.J.* at 472, 416 *A.*2d 852). *See also Greig v. Macy's Northeast*, 1 *F.Supp.*2d 397 (D.N.J.1998) (stating that "[s]ubstantially related matters have been interpreted broadly in

New Jersey to include matters with related factual and legal issues as well as an unrelated adverse position taken in connection with a former client of twenty-years" (citing *Kaselaan & D'Angelo Assocs. Inc. v. D'Angelo*, 144 *F.R.D.* 235, 241 (D.N.J.1992)).

A distillation of these varied precepts yields a workable standard: for purposes of *RPC* 1.9, matters are deemed to be "substantially related" if (1) the lawyer for whom disqualification is sought received confidential information from the former client that can be used against that client in the subsequent representation of parties adverse to the former client, or (2) facts relevant to the prior representation are both relevant and material to the subsequent representation. We adopt that standard because it protects otherwise privileged communications, *see RPC* 1.6(a) (proscribing revelation of "information relating to representation of a client"), while also requiring a fact-sensitive analysis to ensure that the congruity of facts, and not merely similar legal theories, governs whether an attorney ethically may act adverse to a former client.

We turn, then, to the application of that standard to the case before us.

### D.

It is uncontested that the law firm represented plaintiff in tax appeal matters in 2006 and 2007. The record, however, is unclear as to the extent of the law firm's representation of plaintiff after 2007. Although the law firm bears the burden of going forward to demonstrate that the matters at issue in the former and current representations are not "substantially related," plaintiff, as the moving party, retains the burden of persuasion and, thus, of proving that, in fact, the current and former representations are "substantially related." That burden is not met in this record.

Superficially, the law firm's involvement in both its prior representation of plaintiff and its current representation of taxpayers'

tax appeals touches the same subject matter: the propriety of a municipal real estate tax assessment. That similarity, however, does not withstand closer scrutiny. The record reflects that the law firm's representation of plaintiff involved exclusively the defense of tax appeals lodged by the primary industry of Atlantic City: a handful of large casino and hospitality entities. In contrast, the law firm sought to represent some two hundred-plus Atlantic City taxpayers in their tax appeals, and the record does not reveal the break-down between residential versus commercial taxpayers, or even among commercial properties. What the record does reveal is that plaintiff's sole complaint—and the basis on which it sought the law firm's disqualification—arises from plaintiff's concern that the law firm may have acquired otherwise privileged information when it participated, on a non-voting basis, in the selection of the revaluation company that produced the assessments subject to the 2009 tax appeals. On this record, that is far too slender a reed to support a disqualification order.

As the minutes of the revaluation selection committee reveal, the law firm attended two of its meetings. The first of these addressed the selection of a revaluation company to conduct a city-wide revaluation of non-casino owned/operated property, and the other focused on the selection of a revaluation company to conduct a city-wide revaluation of casino owned/operated property. In either case, the minutes disclose that the sole point discussed was the selection of the real estate revaluation company; no discussion of valuation methodology or other substantive matters was held.[10] Indeed, the appraiser retained by plaintiff whose appraisals were being challenged by the law firm in the 2009 tax appeals was a different appraiser than the one plaintiff used while the law firm

---

[10] We observe that, even if the valuation methodology had been discussed at those meetings, the contents of those discussions hardly could be deemed confidential. In its defense of any filed tax appeals, plaintiff would have been required to disclose how it reached the value it assigned to the property subject to the appeal, a disclosure that had to be at least equal to, if not far greater than, any information imparted at a selection meeting.

represented plaintiff. As the law firm asserted before the Tax Court,

> because of the 2008 revaluation, there was a clean break between the 2007 assessments and the 2008 assessments. Also, since the principal work of challenging and defending tax assessments falls on the outside appraisers and since [plaintiff] has employed different outside appraisers for 2008 and 2009 than the one it used in 2006 and 2007, no useful and relevant information heard in [the law firm]'s earlier work will be useful or protected from disclosure in prosecuting the 2009 challenges.
>
> [*City of Atlantic City, supra,* 25 *N.J.Tax* at 111.]

Those assertions stand uncontested.

 For those reasons, plaintiff can point to no confidential communications it shared with the law firm that could have been or might be used against it in the 2009 tax appeals. In this respect, we discount the Tax Court's unfounded concern that, during 2006–2007, the law firm *may* have been privy to plaintiff's settlement determinations or methodology, information that might be used against plaintiff in the 2009 tax appeals. *Id.* at 117. Simply said, there is no proof of any settlement tactics or strategy being shared with the law firm and, because the "appearance of impropriety" standard no longer has any vibrancy when gauging the propriety of attorney conduct, surmise alone cannot support an order of disqualification.

Similarly, there is no record proof that the facts of the prior representation—the law firm's 2006–2007 representation of plaintiff in defense of tax appeals—are relevant or material to the 2009 tax appeals. The law firm's 2006–2007 work on behalf of plaintiff dealt with very large commercial properties appraised by a different appraiser than the one who provided the valuations at issue in the 2009 tax appeals. Thus, other than the purely superficial similarity that all of this work involved tax appeals, there are no facts in this record common to the 2006–2007 tax appeals in which the law firm represented plaintiff, on the one side, and the 2009 tax appeals in which the law firm represented taxpayers, on the other side.

In sum, we conclude that (1) during its representation of plaintiff in 2006–2007, the law firm did not receive confidential information from plaintiff which can be used against plaintiff in the prosecution of the 2009 tax appeals adverse to plaintiff, and (2) the facts relevant to the law firm's 2006 representation of plaintiff also are not relevant and material to the law firm's representation of the taxpayers in the 2009 tax appeals. In those circumstances, the order of disqualification entered against the law firm was unwarranted and must be vacated.

## IV.

The judgment of the Appellate Division is reversed, the order of the Tax Court disqualifying the law firm is vacated, and the case is remanded to the Tax Court for further proceedings consistent with the principles to which we have adverted.[11]

*For reversal, vacation and remandment*—Chief Justice RABNER and Justices LONG, ALBIN, WALLACE, RIVERA-SOTO and HOENS—6.

*Opposed*—None.

---

[11] As part of its motion for leave to appeal, the law firm also sought review of the Appellate Division's denial of the law firm's motion to supplement the record on appeal. Although our *Rules of Court* do not provide for it explicitly, "an appellate court has the inherent power to address such a motion [to supplement the record]" subject to the application of certain enumerated factors. *Liberty Surplus Ins. Co. v. Nowell Amoroso, P.A.,* 189 *N.J.* 436, 452–53, 916 A.2d 440 (2007). In light of our disposition of this appeal, we need not address the substance of that application, and it is denied as moot.