**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3133-18T1

J.G.S.,

     Plaintiff-Respondent,

v.

L.M.S.,

     Defendant-Appellant.

_____

Argued September 9, 2019 – Decided December 6, 2019

Before Judges Rothstadt and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Docket No. L-1316-18.

Rebekah Raye Conroy argued the cause for appellant (Stone Conroy LLC, and Williams Law Group, LLC, attorneys; Rebekah Raye Conroy and Victoria D. Miranda, of counsel and on the briefs).

Steven M. Resnick argued the cause for respondent (Ziegler, Zemsky & Resnick, attorneys; Steven M. Resnick and Jonathan H. Blonstein, on the brief).

PER CURIAM

This matter arises from plaintiff J.G.S.'s action against defendant L.M.S.,[1] his ex-wife, for defamation, intentional infliction of emotional distress, aiding the commission of a tort, and conspiracy, based on defendant's statements and conduct in the course of an investigation by the Division of Child Protection and Permanency (the DCPP). Prior to the order that is the subject of this appeal, defendant made a successful motion to disqualify plaintiff's law firm, Ziegler, Zemsky & Resnick, LLC (ZZR), based on the fact that an attorney at ZZR had previously represented defendant in the DCPP matter. Thereafter, on January 18, 2019, the trial judge granted reconsideration after determining that the disqualified attorney's conflict need not be imputed to the entire firm. Having reviewed the record in light of the governing legal principles, we conclude that ZZR's disqualification is mandated by the Rules of Professional Conduct (RPC) 1.10(c). Because the judge's decision on reconsideration was incorrect as a matter of law, we now reverse.

In July 2017, the DCPP initiated an investigation after receiving a report that plaintiff had abused one of the parties' children. On July 17, 2017, defendant retained Williams Law Group, LLC (WLG) to represent her in

---

[1] We use initials to preserve the confidentiality of the family. R. 1:38-3(d)(12) and (13).

connection with the DCPP's investigation.  The retainer agreement specified that the legal services to be provided were to assist in the resolution of the DCPP investigation.  Paragraph 5 of the retainer specified that "<u>Allison C. Williams, Esq.</u> shall oversee managing your matter[, and] <u>Elizabeth D. Burke, Esq.</u>, and Associates shall be the attorney[s] predominately involved in your matter."[2]  At least through the end of July 2017, Elizabeth Burke, an associate attorney at WLG, was the attorney predominately involved in defendant's matter and was defendant's main point of contact.  Before meeting with defendant, Burke reviewed defendant's file, which included a confidential six-page journal detailing defendant's "contemporaneous notes, thoughts, reflections, and observations of [her] children, [J.G.S.], and the DCPP investigation . . . ."  On July 20, 2017, Burke met with defendant for over an hour, discussing family history, the DCPP's investigation and interviews of the children, conversations with the family therapist, and legal strategy.  Burke took notes about the investigation and the parties' children.  After the meeting, Burke corresponded

---

[2]  A separate retainer agreement dated July 2018 indicated that the legal services to be rendered pursuant to the retainer was a "Motion to Dismiss – Civil Complaint."  Paragraph 5 of that retainer, specified that "<u>Allison C. Williams, Esq.</u>, shall oversee managing your matter, and <u>Victoria D. Miranda, Esq.</u>, and Associates shall be the attorneys predominately involved in your matter."

with defendant, discussing the DCPP's investigation, plaintiff's actions related to the children, and legal strategy. Burke also communicated with the DCPP, the Morris County Prosecutor's Office, and various healthcare providers on defendant's behalf. Burke's representation of defendant ended when Burke left WLG to join ZZR, the firm representing plaintiff in the current action. Burke has been employed at ZZR since leaving WLG.

In July 2018, plaintiff, represented by ZZR, filed the instant complaint, alleging that defendant made defamatory statements about him in connection with the DCPP's 2017 investigation. He further alleged that defendant aided and conspired with others to interfere with his custodial and parenting time rights and that her actions constituted intentional infliction of emotional distress.

Thereafter, defendant filed a motion to disqualify ZZR from representing plaintiff in his action against her. In support of the motion, defendant certified that "Burke was the attorney primarily handling my matter and had given me advice regarding not only the DCPP matter, but also how to handle same within the context of our custody and parenting time arrangement – the very same issues that are the crux of [p]laintiff's [c]omplaint against me." In opposing disqualification, Steven M. Resnick certified the following:

> [W]hen Burke joined my firm over a year ago, there
> was no litigation between my firm and the [WLG] as to

the parties. As such, there was no active "side-switching" of the associate at that time. The . . . parties were involved with the DCPP in the time period in issue during the very early stages of the confidential investigation. The matrimonial post judgment litigation did not begin until the end of September 2017, well after Burke left the [WLG] firm. The instant matter is a different matter in the civil court.

In addition, Resnick questioned WLG's assertion that Burke was "primarily" responsible for defendant's file. Resnick argued that the claim she was primarily responsible "did not even make sense . . . given her skill level that requires supervision as to any decision making on a file or certainly before any legal advice would be provided."

Burke also submitted a certification opposing disqualification, in which she denied involvement in defendant's case, and she averred,

I have absolutely no memory at all of any confidential information [defendant] may have provided to me if she did, and I did not retain any information (confidential or otherwise) that she may have provided. I have barely any memory of any information related to the case. In fact, I doubt I could even pick [d]efendant out in a crowd. I can attest without hesitation that I possess zero confidential information as to [d]efendant as to any matter.

Confronted with copies of her timesheets from WLG, however, Burke submitted a second certification, in which she acknowledged her involvement in defendant's DCPP matter while an associate at WLG, as described above, though

5

continuing to maintain that there was no prejudice to defendant because she currently has no memory of the details of her past representation of defendant.

On October 22, 2018, the judge granted defendant's disqualification motion. The judge found that ZZR's representation of plaintiff violated RPC 1.9(a) because "Burke's firm now represents [plaintiff] in a 'substantially related' matter where [plaintiff's] interests are now 'materially adverse' to those of the former client, [defendant]." The judge imputed this conflict to ZZR pursuant to RPC 1.10. He determined the conflict could not be waived under RPC 1.10(c) because Burke was the attorney predominately involved with the DCPP's investigation, which is the same matter at issue in plaintiff's action against defendant. He also noted that ZZR did not provide defendant with written notice of the conflict.[3]

Thereafter, plaintiff filed a motion for reconsideration. In opposition, defendant explained in greater detail Burke's involvement with the prior matter and provided additional documentation in support of her assertion that Burke

---

[3] It is undisputed that ZZR did not timely discover the conflict of interest through effective screening procedures. Because we do not find that failure to be a dispositive factor in this case, it is unnecessary to address defendant's argument that the procedural deficiency is an independent basis for ZZR's disqualification.

had received confidential information. Significantly, she included two invoices listing the work that Burke had done, and she attached, under seal, the confidential six-page journal she had provided for Burke's review prior to their first meeting. Defendant's attorney also provided, under seal, a copy of the notes Burke took during her meeting with defendant.[4]

The judge granted plaintiff's motion and reversed his prior decision. The judge concluded that although Burke undeniably had a conflict under RPC 1.9(a), he nevertheless decided not to impute the conflict to the entire firm because ZZR "did not 'knowingly' represent a person in a matter in which another lawyer at the firm is disqualified." Despite ZZR's failure to notify defendant of the conflict, as required by RPC 1.10(c)(3), the judge found that, upon balancing the parties' interests, it would be more inequitable to bar ZZR from representing plaintiff. To remedy the prejudice to defendant, the judge instructed ZZR to screen Burke from any activity related to plaintiff's matter and to refrain from using any evidence that may have been derived from Burke's prior attorney-client relationship with defendant.

---

[4] Burke's notes and defendant's journal were provided to this court under seal. There is no need, however, to discuss the content of the documents, which were not provided to plaintiff, as Burke's own certification and her timesheets suffice to establish her representation of defendant.

On appeal, defendant argues that the judge erred in reversing his decision to disqualify ZZR from representing plaintiff. Defendant avers that permitting ZZR to represent plaintiff fails to enforce the rules governing conflicts of interest, prejudices defendant, and undermines public confidence in the integrity of the bar. Plaintiff counters that Burke could not have been the WLG attorney primarily handling the file, based on her alleged inexperience and status as an associate.

We review a grant of a motion for reconsideration for abuse of discretion. See Guido v. Duane Morris LLP, 202 N.J. 79, 87 (2010) (citation omitted). A motion for reconsideration "shall state with specificity the basis on which it is made, including a statement of the matters or controlling decisions which counsel believes the court has overlooked or as to which it has erred." R. 4:49-2.

> Reconsideration should be utilized only for those cases which fall into that narrow corridor in which either 1) the Court has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the Court either did not consider, or failed to appreciate the significance of probative, competent evidence.
>
> [Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).]

We review a trial judge's decision on a disqualification motion de novo. City of Atlantic City v. Trupos, 201 N.J. 447, 463 (2010). Therefore, we need not defer to the trial judge's decision. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). We must weigh "'the need to maintain the highest standards of the [legal] profession' against 'a client's right freely to choose his counsel.'" Dewey v. R.J. Reynolds Tobacco Co., 109 N.J. 201, 205 (1988) (alteration in original) (quoting Gov't of India v. Cook Indus., Inc., 569 F.2d 737, 739 (2d Cir. 1978)).

RPC 1.9(a) prohibits "[a] lawyer who has represented a client in a matter [from] thereafter represent[ing] another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client gives informed consent confirmed in writing." Matters are substantially related if

> (1) the lawyer for whom disqualification is sought received confidential information from the former client that can be used against that client in the subsequent representation of parties adverse to the former client, or (2) facts relevant to the prior representation are both relevant and material to the subsequent representation.
>
> [Trupos, 201 N.J. at 451-52.]

We note the judge correctly found that the circumstances in this matter constitute a conflict of interest under RPC 1.9(a). Plaintiff's argument that the tort case and the DCPP case are "different matters" is unavailing, as plaintiff's civil complaint is entirely premised on defendant's statements and conduct during the DCPP's investigation. Defendant's statements to Burke about plaintiff, the children, and the DCPP and criminal investigations are clearly relevant and material to plaintiff's present claims that defendant made defamatory statements about him and used the DCPP investigation to interfere with his custodial rights. See Trupos, 201 N.J. at 451-52.

In addition, we conclude that Burke, by her own admission, obtained confidential information from defendant while an associate at WLG. A conflict arose once she obtained the confidential information, and the fact that she only handled the matter for a few weeks is not sufficient to cure the conflict. Nor is the fact that Burke has no present recollection of her past representation sufficient to cure the undisputed fact that Burke herself could not participate in plaintiff's representation at ZZR.

We now turn to the judge's conclusion on reconsideration that Burke's indisputable conflict need not be imputed to the firm. RPC 1.10(a) generally precludes any other lawyer employed by the disqualified attorney's firm from

"knowingly represent[ing] a client when any one of them practicing alone would be prohibited from doing so by . . . RPC 1.9." In concluding that ZZR could continue its representation, the trial judge relied on the fact that ZZR did not know Burke had a conflict with respect to plaintiff.

However, irrespective of ZZR's subjective ignorance of Burke's conflict, another lawyer in the disqualified attorney's firm may represent the client only if three requirements are met:

> (1) [T]he matter does not involve a proceeding in which the personally disqualified lawyer had primary responsibility;
>
> (2) the personally disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and
>
> (3) written notice is promptly given to any affected former client to enable it to ascertain compliance with the provisions of this Rule.
>
> [RPC 1.10(c).]

Although we find that none of the three requirements were satisfied in this case, we conclude that RPC 1.10(c)(1) alone requires ZZR's disqualification.

"'Primary responsibility' denotes actual participation in the management and direction of the matter at the policy-making level <u>or responsibility at the operational level as manifested by the continuous day-to-day responsibility for</u>

litigation or transaction decisions." RPC 1.0(h) (emphasis added). ZZR's argument that Burke could not have been "primarily responsible" for defendant's the DCPP matter because she was not the partner assigned to the file is unavailing, as she clearly had responsibility at an operational level on a day-to-day basis, even if she was subject to a managing partner's supervision.

We conclude that the trial judge's decision on the initial disqualification motion represented a correct application of the RPC, and his decision to later reverse that disqualification based on a balancing of the equities was not permitted by the rules. Because the judge's decision on reconsideration was incorrect as a matter of law, we are constrained to reverse.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3133-18T1