**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2536-22

OLGA GALLINAT by
MARIO GALLINAT,
Attorney-in-fact,

     Plaintiff-Respondent,

v.

MIGUEL JOSE GALLINAT,
a/k/a MIGUEL J. GALLINAT
and JORGE, a/k/a GEORGE
GALLINAT,

     Defendants-Appellants.

_____

        Argued May 20, 2024 – Decided January 30, 2025

        Before Judges Berdote Byrne and Bishop-Thompson.

        On appeal from the Superior Court of New Jersey, Law
        Division, Hudson County, Docket No. DC-001848-23.

        Miguel Jose Gallinat, appellant, argued the cause pro se
        (Miguel Jose Gallinat and Jorge Gallinat, on the pro se
        brief).

        Respondent has not filed a brief.

The opinion of the court was delivered by

BISHOP-THOMPSON, J.A.D.

Defendants Miguel and Jorge Gallinat appeal from the April 12, 2023 Law Division order ejecting them from a residential property at the center of this intrafamily dispute. Following a bench trial, the trial court found that plaintiff Olga Gallinat signed a durable power of attorney (POA) that gave authority to Mario Gallinat to address the care and control of the residential property that was free and clear of any claim of defendants. We affirm.

We discern the facts from the two-day bench trial. At the trial, plaintiff was represented by counsel and defendants were self-represented. Mario testified that Olga has three sons: Jorge, Mario, and Miguel.[1] Olga lived in the first-floor unit of a multi-family home until December 2020, when Mario allegedly found her "highly intoxicated" and moved Olga to his home "for [her] protection and care." Olga then rented her unit while Jorge and Miguel continued to live in the other two units. Mario testified that Jorge and Miguel did not pay rent or utilities. Olga became the sole owner of the three-unit residential property in Weehawken upon the passing of her husband in January

---

[1] To avoid confusion, we refer to the parties by their first names because they share a surname. No disrespect is intended.

A-2536-22

2022. On October 5, 2022, Olga signed a general durable POA designating Mario as her attorney-in-fact and agent.

Mario testified that he obtained a temporary restraining order (TRO) against defendants because he was "viciously attacked" on July 30, 2022. In response, defendants changed the locks on the property. The parties resolved the TRO through mediation in January 2023; however, neither Mario nor Olga had access to the property after 2022.

At the second day of trial, Jorge argued plaintiff's counsel had a conflict of interest because in 2020 he and Mario consulted with counsel regarding allegations that their sister was "squandering" their parents' money. Counsel, however, was not retained. Mario and counsel did not recall such a meeting. After considering the parties' arguments, the trial judge ruled a conflict of interest did not exist. The judge reasoned that plaintiff's counsel had not been retained, the consultation did not concern the possession of the Weehawken property, and therefore, Mario was not a former client.

Regarding changing the locks on the property, Jorge testified they were "trying to obtain back the property" and they were "in fear for [their] safety." Miguel offered no testimony regarding possession.

A-2536-22

In an oral opinion, the trial judge determined the POA gave Mario the authority "to address all of [Olga's] affairs, including the care and control of the building [where] the defendants [lived]." The trial judge found defendants credible but also found they offered no proofs that they had a right to possession of the property. The judge also noted no agreement existed for defendants to stay in the units. Accordingly, the court found defendants did not have a right to be on the property.

Following the trial, the judge entered an order dated April 14, 2023, directing that plaintiff shall "immediately recover from defendants' the possession of the described premises" within thirty days and defendants were to vacate the property. This appeal followed.

Defendants raise four arguments on appeal. Defendants first contest the validity of the POA signed by Olga. Second, defendants argue Mario has not been paying the bills on the property. Third, defendants argue they are residents and not tenants of the property. Lastly, defendants renew their argument that plaintiff's counsel had a conflict of interest.

A trial judge's factual findings made following a bench trial are accorded deference and will be left undisturbed so long as they are supported by substantial credible evidence. Reilly v. Weiss, 406 N.J. Super. 71, 77 (App.

Div. 2009) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 483-84 (1974)); see also Mountain Hill, L.L.C. v. Twp. of Middletown, 399 N.J. Super. 486, 498 (App. Div. 2008) (noting appellate courts "do not weigh the evidence, assess the credibility of witnesses, or make conclusions about the evidence." (quoting State v. Barone, 147 N.J. 599, 615 (1997))). On the other hand, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (alteration in original) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Pursuant to N.J.S.A. 2A:35-1, "[a]ny person claiming the right of possession of real property in the possession of another, or claiming title to such real property, shall be entitled to have his rights determined in an action in the Superior Court." In Marder v. Realty Construction Co., 84 N.J. Super. 313, 320 (App. Div. 1964), we noted there was "no doubt" that N.J.S.A. 2A:35-1 was "intended to allow a remedy to one who claims title to property in the possession of another." (Emphasis omitted.) Thus, we concluded that "[t]he statute replace[d] the common law action of ejectment." Ibid.

A-2536-22

"In an action for ejectment the plaintiff has the burden of establishing his title and, if he fails to establish a good paper title, the judgment must go against him." Perlstein v. Pearce, 12 N.J. 198, 204 (1953). "[T]he plaintiff must recover upon the strength of his own title, and . . . cannot rely upon the weakness of that of his adversary." Phoenix Pinelands Corp. v. Davidoff, 467 N.J. Super. 532, 615 (App. Div.) (alterations in original) (quoting Troth v. Smith, 68 N.J.L. 36, 37 (Sup. Ct. 1902)), certif. denied, 249 N.J. 95 (2021). "If the [defendant] 'fails to support his own title, the [plaintiff] will retain possession until he is ousted by someone who has a superior title.'" Ibid. (quoting Troth, 68 N.J.L. at 37).

Here, it is undisputed from the record that Olga has been the sole owner of the property since 2022. Defendants offer no proofs that they have an equitable claim to the property. Plaintiff has met her burden, and we agree with the trial judge that defendants did not establish a right of possession. Thus, defendants' claim of having an equitable interest as residents in the property failed.

We review a decision on a disqualification motion de novo. City of Atl. City v. Trupos, 201 N.J. 447, 463 (2010); see also Greebel v. Lensak, 467 N.J. Super. 251, 257 (App. Div. 2021). The initial burden of production lies with the party seeking disqualification. Trupos, 201 N.J. at 462; O Builders & Assoc.,

Inc. v. Yuna Corp. of NJ, 206 N.J. 109, 127 (2011). If the movants make that showing, "the burden shifts to the attorney(s) sought to be disqualified to demonstrate that the matter or matters in which . . . they represented the former client are not the same or substantially related to the controversy in which the disqualification motion is brought." Trupos, 201 N.J. at 463.

Having reviewed the record, we discern no conflict of interest under RPC 1.18, which governs whether an attorney is disqualified from representing a client whose adversary is a former prospective client of the attorney. The record is barren of competent proof to support defendants' claim of a conflict of interest. The mere consultation with counsel on another issue did not create an attorney-client relationship. Moreover, defendants did not make a timely application to adjourn the bench trial or to bring the alleged conflict to the trial judge's attention prior to the start of the trial. We therefore conclude there is no conflict requiring disqualification of plaintiff's counsel.

To the extent we have not addressed defendants' remaining arguments, we deem them without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2536-22