246 N.J. Super. 348 (1991)
587 A.2d 667
ANN MARIE T. BARNES, PLAINTIFF-RESPONDENT,
v.
R.J. REYNOLDS TOBACCO CO. AND THE TOBACCO INSTITUTE, DEFENDANTS-APPELLANTS, AND BROWN & WILLIAMSON TOBACCO CORPORATION, INTERVENOR-APPELLANT.
JOHN PAUL BERKO, SR., AND CORINNE BERKO, PLAINTIFFS-RESPONDENTS,
v.
R.J. REYNOLDS TOBACCO CO., DEFENDANT-APPELLANT.
DORIS SMITH AND LEROY SMITH, PLAINTIFFS-RESPONDENTS,
v.
R.J. REYNOLDS TOBACCO CO. AND THE AMERICAN TOBACCO CO., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued February 14, 1991.
Decided March 7, 1991.
*350 Before Judges GAULKIN, HAVEY and SKILLMAN.
Alan E. Kraus argued the cause for appellants (Riker, Danzig, Scherer, Hyland & Perretti, attorneys for R.J. Reynolds Tobacco Co.; Jones, Day, Reavis & Pogue, of counsel; Norris, McLaughlin & Marcus, attorneys for Brown & Williamson Tobacco Corporation; Paul, Weiss, Rifkind, Wharton & Garrison, of counsel; Dughi & Hewit, attorneys for The Tobacco Institute; Covington & Burling, of counsel; Kenney & Kearney, attorneys for The American Tobacco Company; Chadbourne & Parke, of counsel).
Frederick J. Dennehy argued the cause for respondents (Wilentz, Goldman & Spitzer, attorneys; Frederick J. Dennehy, on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
Pursuant to leave granted, defendants and intervenor Brown & Williamson Tobacco Company (B & W) appealed from the denial of their motions to disqualify Wilentz, Goldman & Spitzer (the Wilentz firm) from serving as co-counsel to plaintiffs in these three lawsuits. Subsequently, the Supreme Court of New Jersey decided Dewey v. R.J. Reynolds Tobacco Co., 109 N.J. 201, 536 A.2d 243 (1988), which involved a motion to disqualify the Wilentz firm under closely related circumstances. Accordingly, we remanded these matters, without retaining jurisdiction, for the development of a fuller record with respect to the circumstances identified by the Court in Dewey relevant to the motions for disqualification. We described the issues to be addressed on the remand as follows:

*351 (1) the status of the present litigation and the possible prejudice to plaintiffs by virtue of removal of the Wilentz Goldman firm, and (2) the relationship of these cases to Dewey, the role B & W played in the Tobacco Institute, the nature and extent of B & W's participation in any joint defense or strategy involved in these cases, and any knowledge Sidney Weiss may have had with respect to that strategy.
* * * * * * * *
In essence, the trial judge should update the record in light of Dewey and decide whether Wilentz Goldman should be disqualified and, independently, whether because of Wilentz Goldman's expertise as a result of their involvement with these and related matters, and given the status of these matters, this is such an "unusual case," Dewey, 109 N.J. at 222 [536 A.2d 243], that it permits or requires Wilentz Goldman's continued involvement, with or without pay.
On remand, the trial court conducted a two day evidentiary hearing regarding all the circumstances of the Wilentz firm's representation of plaintiffs. On August 7, 1990, the court issued a written opinion in which it concluded that the Wilentz firm's continuing representation of plaintiffs violates the Rules of Professional Conduct (RPC), but that in light of the "compelling and unusual" circumstances of this case and the "public policy" in favor of affording "plaintiffs an opportunity to be heard," the Wilentz firm would be permitted to continue representing plaintiffs. The trial court further concluded that "[b]ecause of the fact that this case has been stayed pending the determination of the Wilentz disqualification and in light of the representations of all counsel that there is substantial discovery remaining, the Wilentz office will not be prevented from collecting a fee if in fact one is generated."
Defendants and B & W again moved for leave to appeal from the order denying their motions to disqualify the Wilentz firm, which we again granted.
Dewey and the three cases before us on this appeal together with four other products liability cases against tobacco companies were brought by the Wilentz firm as co-counsel with two other law firms, Budd, Larner, Gross, Picillo, Rosenbaum, Greenberg & Sade (the Budd Larner firm) and Porzio, Bromberg & Newman (the Porzio firm). However, the Porzio firm's involvement ended when the attorney responsible for the cases, *352 Marc Edell, left Porzio and became affiliated with Budd, Larner.
The defendants in the eight cases differed, depending on what brand or brands of cigarettes the plaintiff or plaintiff's decedent had smoked. B & W was a defendant in Dewey but is not a defendant in the three cases before us.
When the suits were filed, B & W was represented by the firm of Rosen, Weiss, Slattery & Burstein (the Rosen firm). William Slattery and Sidney Weiss were both partners in that firm. Slattery spent more than half his time during 1984 and 1985 representing B & W. Weiss had only limited involvement in the Rosen firm's representation of B & W, consisting of a little over an hour of research, the resolution of a question of possible conflict of interest with a client and limited discussions with Slattery regarding the representation.
In November 1985, Slattery left the Rosen firm and became a partner in the firm of Norris, McLaughlin & Marcus (the Norris McLaughlin firm), taking B & W with him as a client. In May 1986, Weiss left the Rosen firm and became a partner in the Wilentz firm. Since joining that firm, Weiss has had no involvement in the tobacco cases nor has he had any discussions with anyone in the firm regarding the merits of the tobacco cases.
Based on these facts, the Supreme Court concluded that there was a "reasonable basis" for "an ordinary knowledgeable citizen acquainted with the facts" to conclude that Weiss had "represented" B & W while a partner in the Rosen firm and that he was therefore disqualified from representing Dewey. Dewey v. R.J. Reynolds Tobacco Co., supra, 109 N.J. at 216, 536 A.2d 243. The Court further noted that under RPC 1.10(a) the disqualification of Weiss ordinarily would require the disqualification of the Wilentz firm. Id. at 217, 536 A.2d 243. However, the Court concluded that under the extraordinary circumstances of that case, Dewey's interest in continuing to be represented by the Wilentz firm outweighed the profession's *353 interest in avoiding appearances of impropriety and consequently that the Wilentz firm should not be disqualified. Id. at 218-21, 536 A.2d 243. The Court described those circumstances as follows:
The complaint in this matter was filed by Budd, Larner in 1982. Wilentz, Goldman became co-counsel in 1983. As of September 1986 that firm's attorneys and paralegals had expended more than 1,800 hours preparing this case for trial. They have undoubtedly expended many hundreds more since that time. By that September 1986 date thirty-nine witnesses had been deposed, and Wilentz, Goldman attorneys had attended all but three of those depositions. Other depositions were scheduled to be taken after that date. Alan Darnell, the Wilentz, Goldman attorney charged with responsibility for this case, filed an affidavit below indicating that, as one might expect in complex litigation, plaintiff's co-counsel have allocated different aspects of the case between themselves. Darnell properly questions whether at this late date, with trial fast approaching, another attorney could effectively master the complicated technical aspects of the case entrusted to him, or whether another attorney could develop the knowledge of and personal relationship with the various witnesses and with the plaintiff herself. [Id. at 218-19, 536 A.2d 243].
The Court concluded that:
As already indicated, had Brown & Williamson's appeal reached us at an earlier juncture, we unquestionably would have upheld the disqualification of the Wilentz, Goldman firm for the reasons set forth above. We believe, however, that an order disqualifying counsel on the eve of trial would do more to erode the confidence of the public in the legal profession and the judicial process than would an order allowing the firm to continue its representation of the plaintiff. [Id. at 219, 536 A.2d 243].
The question is whether the facts of the three cases before us require a different balance to be struck than in Dewey between the interests of the profession in avoiding appearances of impropriety and plaintiffs' interest in continuing to be represented by counsel of their choice.
We recognize that there is a close relationship between both the prosecution and defense of all eight tobacco products liability cases being handled by the Wilentz firm. Plaintiffs allege that all of the tobacco companies, including B & W, are part of an industry-wide conspiracy. Partly for this reason, the Rosen firm was retained not only to represent B & W in cases in which it was a named defendant but also to monitor the other tobacco litigation in New Jersey and to assist in a joint defense *354 of the tobacco industry. Consequently, we agree with the trial court's conclusion that Weiss' representation of plaintiffs would create an appearance of impropriety within the scope of RPC 1.7(c)(2) and that he is disqualified.
However, Dewey holds that the decision whether Weiss' disqualification extends to the entire Wilentz firm depends on whether the legal profession's interest in avoiding the appearance of impropriety is outweighed by plaintiffs' interest in continuing to be represented by counsel of their choice. Applying this test here, we are satisfied that the appearance of impropriety in the Wilentz firm's continuing representation of the three plaintiffs is more attenuated than it was in Dewey because B & W is not a defendant. Therefore, the appearance of impropriety should weigh less heavily in these cases than in Dewey in balancing the "competing interests" of "the `need to maintain the highest standards of the profession'" and "`a client's right freely to choose his counsel.'" Dewey v. R.J. Reynolds Tobacco Co., supra, 109 N.J. at 218, 536 A.2d 243 (quoting Government of India v. Cook Indus., Inc., 569 F.2d 737, 739 (2d Cir.1978)). We also agree with the trial court's further conclusion that defendants and B & W failed to present any evidence which would require reconsideration of the Supreme Court's findings in Dewey that Weiss did not actually represent B & W or acquire any "confidential information concerning that client's affairs." 109 N.J. at 220, 536 A.2d 243.
The plaintiffs' interest in continuing to be represented by the Wilentz firm is similar to that of the plaintiff in Dewey and, as in Dewey, outweighs the profession's interest in avoiding appearances of improprieties. Alan Darnell of the Wilentz firm has established an extremely close bond with all the plaintiffs. On the other hand, Marc Edell, the attorney primarily responsible for the litigation at Budd Larner, has not met Barnes or Berko and has a strained personal relationship with Mr. Smith. Darnell also has spent between 500 and 600 hours working on depositions and, together with paralegals in the Wilentz firm, *355 he has spent thousands of hours reviewing documents. Furthermore, Darnell has significant expertise in the field of addiction which no other attorney for the plaintiffs possesses or could readily develop.
In view of these circumstances, Edell testified that the Budd Larner firm would not be able to proceed with the litigation without the assistance of the Wilentz firm. Both Darnell and Edell also expressed the opinion that no other law firm would be able or willing to assume representation of plaintiffs if the Wilentz firm were forced to withdraw from the litigation. The trial court found this testimony credible, stating that "it would seem unlikely at best that any law firm would be able or willing to represent the plaintiffs Barnes, Berko or Smith" and that "[i]f the Wilentz firm is disqualified from proceeding further in this case the plaintiffs Barnes, Berko and Smith will lose their opportunity to present their individual claims." Our own independent review of the record persuades us that at a minimum plaintiffs' chances of succeeding in their suits would be materially reduced if the Wilentz firm were disqualified from representing them.
Notwithstanding these compelling circumstances for permitting continued representation of plaintiffs by the Wilentz firm, defendants and B & W argue that Dewey only permits continued representation in the face of a violation of the Rules of Professional Ethics where a case is "on the eve of trial" and that this case is not "on the eve of trial." In support of this argument, they rely upon a single sentence of Dewey, quoted previously, which states:
We believe, however, that an order disqualifying counsel on the eve of trial would do more to erode the confidence of the public in the legal profession and the judicial process than would an order allowing the firm to continue its representation of the plaintiff. [Id. at 219, 536 A.2d 243].
Defendants and B & W note that the record in Dewey contained an affidavit, filed in October 1986, which stated that the case was scheduled for trial in February 1987, and they surmise that *356 the Court in Dewey must have assumed that the case could be tried within three months.
However, the Dewey opinion contains no reference to any scheduled trial date. Nor does it contain any discussion of the feasibility of postponing the trial, as would be expected if an impending trial date were the linchpin of its decision. Moreover, the discussion preceding the "eve of trial" sentence relied upon by B & W and defendants focuses upon the amount of work the Wilentz firm had put into the case since its inception and the level of expertise Mr. Darnell had acquired in the area of addiction rather than the time remaining before trial. Id. at 219, 536 A.2d 243.
Consequently, we do not read Dewey to say that a court's obligation to balance the adverse effect upon the legal profession of an appearance of impropriety and a client's interest in retaining his or her attorney is limited to cases which are "on the eve of trial."[1] Rather, the proximity of a trial date should be considered together with all other relevant circumstances in determining whether disqualification is required. Under the extraordinary circumstances of these cases, which are substantially similar to those in Dewey, the balance of these considerations weighs in favor of permitting plaintiffs to continue being represented by the Wilentz firm.
Because we conclude that this case is controlled by Dewey, we further conclude that the same limitation which the *357 Court imposed on the Wilentz firm's continued representation in that case also should be imposed in these cases; that is, that the representation should be provided without any compensation for services rendered subsequent to the date of the decision in Dewey, which was February 1, 1988. The Court in Dewey explained the reason for this limitation as follows:
It is, after all, the failure of Weiss and his new firm to have addressed the obvious ethical implications of their association that has created the awkward situation now confronting us  a failure that but for the Court's overriding concern for the firm's client would result in immediate compelled withdrawal of the firm from this case. We cannot undo the conflict that has preceded our disposition of the matter, nor can we correct the tainted representation without unduly harming the client; but we can prevent those responsible for this sorry state of affairs from profiting from their disregard of the RPCs. [109 N.J. at 219-20, 536 A.2d 243].
This reason for limiting the compensation of the Wilentz firm is equally applicable to these cases, which involve the same professional affiliation and substantially similar professional representations as in Dewey.
Accordingly, we modify the trial court's order of August 9, 1990 to provide that the Wilentz firm shall not receive any compensation for services rendered subsequent to February 1, 1988 and as thus modified the order is affirmed.
NOTES
[1] We note that B & W filed a motion for reconsideration in Dewey in which it pointed out that "this case is far from being on the eve of trial" because additional discovery had to be conducted and part of the case was then before the Appellate Division on an interlocutory appeal. The Supreme Court denied the motion without comment. The interlocutory appeal to this court mentioned in B & W's motion for reconsideration subsequently resulted in a reported opinion of this court and an opinion of the Supreme Court. Dewey v. Brown & Williamson Tobacco Corp., 225 N.J. Super. 375, 542 A.2d 919 (App.Div. 1988), aff'd in part, rev'd in part, sub nom., Dewey v. R.J. Reynolds Tobacco Co., 121 N.J. 69, 577 A.2d 1239 (1990). As of the date of filing of this opinion, Dewey still has not come to trial.