NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0108-24

PENELOPE MAUER,

      Plaintiff-Appellant,

v.

STATE OF NEW JERSEY,
NEW JERSEY DEPARTMENT
OF HUMAN SERVICES, ANN
KLEIN FORENSIC CENTER,
THE BOARD OF TRUSTEES OF
THE ANN KLEIN FORENSIC
CENTER, REED GLADEY,
ANN KENYON, GLENN
FERGUSON, ELIZABETH
CONNOLLY, and VALERIE
MIELKE,

      Defendants-Respondents.

_____

PENELOPE MAUER,

      Plaintiff-Appellant,

v.

STATE OF NEW JERSEY,
STATE OF NEW JERSEY,
DEPARTMENT OF HEALTH,
DIVISION OF BEHAVIORAL
HEALTH SERVICES, TRENTON
PSYCHIATRIC HOSPITAL,

> APPROVED FOR PUBLICATION
>
> **March 28, 2025**
>
> **APPELLATE DIVISION**

ROBYN WRAMAGE-CAPOROSO,
CHIEF EXECUTIVE OFFICER,
TRENTON PSYCHIATRIC
HOSPITAL, ROBIN MURR,
DIRECTOR OF HUMAN
RESOURCES, TRENTON
PSYCHIATRIC HOSPITAL,
ANN KLEIN FORENSIC CENTER,
KRISTIN HUNT, DIRECTOR
OF HUMAN RESOURCES, and
ANN KLEIN FORENSIC
CENTER,

      Defendants-Respondents.

_____

Argued January 29, 2025 – Decided March 28, 2025

Before Judges Currier, Marczyk, and Paganelli.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Mercer County, Docket Nos. L-0197-17 and L-0388-22.

Donald F. Burke, Jr., argued the cause for appellant (Law Office of Donald F. Burke, attorneys; Donald F. Burke and Donald F. Burke, Jr., on the briefs).

Kathleen E. Dohn argued the cause for respondents (Brown & Connery, LLP, attorneys; Kathleen E. Dohn and Therese M. Taraschi, on the brief).

The opinion of the court was delivered by

MARCZYK, J.A.D.

Plaintiff Penelope Mauer appeals from the trial court's July 31, 2024 order denying her motion to disqualify the law firm of Brown & Connery LLP

(B&C) as counsel for defendants. The primary issue on appeal is whether the indictment[1] of William Tambussi, Esq. (Tambussi), a law partner at B&C, creates a conflict of interest requiring the disqualification of the entire law firm from representing defendants in this action. We conclude no conflict of interest exists under the circumstances presented and therefore affirm the trial court's decision.

I.

In January 2017, plaintiff filed a complaint (Mauer I) naming as defendants, the State; New Jersey Department of Human Services (DHS); Ann Klein Forensic Center (AKFC); the Board of Trustees of the AKFC; and several employees of those entities, Reed Gladey; Ann Kenyon; Glenn Ferguson; Elizabeth Connolly; and Valerie Mielke. Plaintiff alleged defendants retaliated against her in violation of the Conscientious Employee Protection Act (CEPA)[2] for reporting suspected patient abuse. In March 2022,

---

[1] Following oral argument, defendants advised the indictment against Tambussi had been dismissed and asserted the appeal is therefore moot. Plaintiff responded that the appeal is not moot because the trial court stayed its decision for forty-five days to allow the State to appeal and the State has indicated it planned to appeal. Given that we do not have a final resolution of the underlying matter, we have determined to issue our opinion.

[2] N.J.S.A. 34:19-1 to -14.

Tambussi and another attorney at B&C were designated as trial counsel for defendants.

Shortly thereafter, plaintiff filed a second complaint (Mauer II) against the State; the Department of Health (DOH), Division of Behavioral Health Services; Trenton Psychiatric Hospital; AKFC; and employees of those entities, Robyn Wramage-Caporoso, Robin Murr, and Kristin Hunt. Plaintiff asserted defendants retaliated against her in violation of CEPA and breached her employment contract. Defendants again retained B&C to represent them. The cases were subsequently consolidated.

In June 2024, the State indicted Tambussi, alleging that he participated with George Norcross in crimes related to the development of the Camden waterfront. The indictment states Tambussi "is an attorney and partner" at B&C and "the long-time personal attorney to" Norcross. It alleged Norcross and his associates extorted and coerced others to acquire property and development rights and that Tambussi "was an active participant in the Norcross Enterprise's plot to use . . . Camden's government to bring a condemnation action" against a developer.

Following the indictment, Tambussi withdrew his appearance on behalf of defendants. Therese M. Taraschi, an attorney at B&C, certified that prior to his withdrawal, Tambussi's "involvement in this matter was limited strictly to

the filing of the designated trial counsel notice" and asserted he "performed no substantive work in the defense of Mauer I [or] Mauer II." She further certified she and Kathleen E. Dohn from B&C performed all the substantive work in the defense of both matters, along with another attorney who has since left the firm.

Against the backdrop of Tambussi's indictment and B&C's continued representation of defendants, plaintiff filed a motion to disqualify the law firm. Specifically, she contended B&C had an unwaivable conflict of interest due to the Attorney General's indictment of Tambussi. Relying on Rule of Professional Conduct (RPC) 1.7(a)(2), plaintiff argued Tambussi's indictment created a "significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person, or by a personal interest of the lawyer." She asserted this conflict was imputed to the other lawyers associated with B&C under RPC 1.10. Plaintiff also relied on the Office of the Attorney General, Outside Counsel Guidelines (2022) [hereinafter AG Guidelines], to support her argument that the indictment created a positional conflict requiring B&C's disqualification. She further reasoned that under RPC 1.9 and Dewey v. R.J. Reynolds Tobacco Co., 109 N.J. 201 (1988), Tambussi's disqualification resulted in the disqualification of B&C because it is a partnership.

The trial court requested that defendants file supporting certifications from DHS and DOH employees and Assistant Attorney General Stephanie Cohen. Both state employees certified they had not requested B&C to withdraw as their counsel, were satisfied with the representation, and desired for the firm to remain their counsel. Cohen, in turn, certified defendants had not requested B&C to withdraw as their counsel following the indictment and that the Office of the Attorney General (OAG), Division of Law (DOL), had not terminated B&C's representation as defendants' counsel.

On July 31, 2024, the trial court denied plaintiff's motion to disqualify B&C from representing defendants, finding the indictment of Tambussi did not create a conflict of interest requiring disqualification. The court found it "[f]actually . . . important to note that [B&C] is not adverse to the State or to the Attorney General." Notably, the court indicated defendants are neither part of the OAG nor factually connected to the indictment. It further held RPC 1.7 was not implicated because B&C and defense counsel do not have any adverse interest to defendants. Additionally, it noted Tambussi was indicted in his personal capacity and was not involved in the litigation of this matter.

The court found the record "d[id] not cast any doubt" that B&C counsel would be "zealous advocates for" defendants. Likewise, the court concluded the imputation of conflicts under RPC 1.10 was inapplicable because no

6

concurrent conflict of interest exists under RPC 1.7, given that defendants are not part of the OAG.

Furthermore, the court determined B&C's representation of defendants would not be materially limited by B&C's responsibilities to another client, a former client, a third person, or by a personal interest of the lawyer. It found the certifications submitted by defendants' representatives reinforced that neither B&C nor its attorneys working on the case had any interest adverse to their clients. For the same reason, the court found the AG Guidelines were not implicated and that no positional conflict existed to warrant disqualification of B&C. Finally, the court held RPC 1.9 was not implicated because the Dewey case, upon which plaintiff relied, involved different facts and applied an outdated version of the Rule. Consequently, the court concluded plaintiff failed to meet her burden of proving there was a reasonable basis to disqualify B&C grounded in an actual conflict.

## II.

Plaintiff argues the trial court erred in denying the motion to disqualify B&C because: the firm has a conflict contrary to the AG Guidelines due to the indictment of Tambussi; B&C's status as an LLP prevents it from continuing to represent defendants after one of its partners has been disqualified; public entities cannot waive conflicts; and the indictment references B&C and an

unnamed partner as participants in wrongdoing. In contrast, defendants argue the court properly denied plaintiff's motion to disqualify B&C because plaintiff failed to show that a conflict of interest exists under either the AG Guidelines or the RPCs.

"[A] determination of whether counsel should be disqualified is, as an issue of law, subject to de novo plenary appellate review." City of Atl. City v. Trupos, 201 N.J. 447, 463 (2010). "Disqualification of counsel is a harsh discretionary remedy which must be used sparingly." Dental Health Assocs. S. Jersey, P.A. v. RRI Gibbsboro, LLC, 471 N.J. Super. 184, 192 (App. Div. 2022) (quoting Cavallaro v. Jamco Prop. Mgmt., 334 N.J. Super. 557, 572 (App. Div. 2000)). Thus, courts view disqualification motions "skeptically in light of their potential abuse to secure tactical advantage." Escobar v. Mazie, 460 N.J. Super. 520, 526 (App. Div. 2019) (citing Dewey, 109 N.J. at 218).

"In evaluating motions for the disqualification of counsel for an adversary pursuant to . . . RPC [1.9]," courts must "balance competing interests, weighing the need to maintain the highest standards of the profession against a client's right freely to choose his counsel." Twenty-First Century Rail Corp. v. N.J. Transit Corp., 210 N.J. 264, 273-74 (2012) (quoting Dewey, 109 N.J. at 218). However, "determining how to strike that balance fairly" requires courts "to recognize and to consider that 'a person's right to retain

A-0108-24

counsel of his or her choice is limited in that there is no right to demand to be represented by an attorney disqualified because of an ethical requirement.'" Id. at 274 (quoting Dewey, 109 N.J. at 218).

The party seeking the disqualification "bears the burden of persuasion." RRI Gibbsboro, LLC, 471 N.J. Super. at 194. "[D]isqualifying an attorney or an office of attorneys based on a conflict 'must have some reasonable basis' grounded in an actual conflict." State v. Smith, 478 N.J. Super. 52, 64 (App. Div. 2024) (citing State v. Harvey, 176 N.J. 522, 529 (2003)).

A.

Plaintiff asserts B&C has a conflict contrary to the AG Guidelines. Specifically, she contends B&C has a "positional conflict" due to the Attorney General's indictment of Tambussi and B&C continuing to represent the State in this matter. Plaintiff further asserts the indictment's references to B&C conflicts with the DOL's duties to safeguard the public's confidence and interest under the AG Guidelines. Defendant counters B&C has no positional conflict under the AG Guidelines because Tambussi was indicted in his personal capacity, the indictment bears no relation to facts and allegations in the underlying case, and the B&C attorneys handling the defense do not have any adverse interest to their clients or the State.

In cases where the DOL retains outside counsel, the <u>AG Guidelines</u> seek to ensure that "outside counsel provide the highest quality of legal representation and services for the State while maintaining effective supervision and cost controls." <u>AG Guidelines</u>, at 1. Law firms are deemed to agree to adhere to the guidelines upon accepting a retention agreement with the State. <u>Ibid.</u> Furthermore, the DOL "has a duty to protect the public interest," ensuring "the legal system operates in a manner that safeguards the public's confidence in the integrity and impartiality of its administration." <u>Ibid.</u> As such, the State has conflict requirements beyond those mandated by the RPCs. <u>Id.</u> at 2.

Specifically, a "positional conflict" can "arise from counsel's advocacy of positions conflicting with important State interests"—the existence of which is "a fact-sensitive determination." <u>Id.</u> at 3. Generally, outside counsel should "avoid advocating a position that would limit the authority of the State client, would expand the scope of potential liability of the State client, or would require the State client to divulge information that the State client generally regards as confidential or privileged." <u>Ibid.</u> "Outside counsel have a continuing obligation to ascertain whether positions they intend to assert on behalf of other clients are inconsistent with the interests of the State . . . ." <u>Ibid.</u> After consulting with outside counsel, the DOL must "determine, in its

10

A-0108-24

sole discretion, whether an impermissible positional conflict exists, or whether other circumstances exist that would undermine the public's confidence in the fair and proper operation of State government." Id. at 4.

Here, the court correctly concluded the AG Guidelines are not implicated because nothing in the indictment or this civil action would cause B&C to advocate a position that would conflict with or be adverse to the interests of the State or defendants. Plaintiff asserts a conclusory argument that B&C has a positional conflict "as a result of the indictment of Tambussi by the New Jersey Attorney General." However, she does not specifically articulate what positional conflict exists. She, likewise, provides no support for her contention that the indictment's references to B&C "does not 'safeguard[] the public's confidence' or 'protect the public interest.'"

Contrary to plaintiff's arguments, the indictment of Tambussi does not create a positional conflict requiring B&C's disqualification. Notably, the DOL has not determined a positional conflict exists, as required by the AG Guidelines. Id. at 3. Indeed, Cohen, who is fully aware of the underlying litigation and plaintiff's motion to disqualify, certified the DOL has not terminated B&C's representation of defendants or requested their withdrawal. Defendants also certified they desired the continued representation by B&C.

11

Moreover, the indictment named Tambussi individually as a defendant. Tambussi did not perform any substantive work in this case prior to the indictment. Additionally, the allegations against Tambussi regarding certain real estate transactions in Camden are far afield from plaintiff's underlying CEPA and breach of contract claims in this consolidated matter.

Thus, in defending against plaintiff's employment-based claims, B&C will not be required to advocate a position that is inconsistent with or prejudicial to the State's interest in prosecuting unrelated criminal charges against Tambussi. AG Guidelines, at 3. Therefore, the trial court correctly determined B&C's representation of defendants does not create a positional conflict of interest contrary to the AG Guidelines.

B.

Plaintiff contends that given B&C is a partnership, it cannot continue representing defendants where one of its partners is disqualified. She reasons Tambussi was previously counsel of record, and his knowledge is imputed to his partners. Plaintiff relies on Dewey for the proposition that it is improper for Tambussi to represent the State after his indictment and, therefore, it is also improper for his law partners to continue representing the same clients. Defendants, in turn, assert plaintiff's argument fails because RPC 1.9 is

12

inapplicable, and <u>Dewey</u> is factually distinguishable and based on an outdated version of RPC 1.9.

RPC 1.9 outlines various duties a lawyer owes to former clients. Specifically, it prohibits a lawyer, who represented a client, from representing another client thereafter "in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client gives informed consent confirmed in writing."  RPC 1.9(a).  A public entity, however, "cannot consent to a representation otherwise prohibited by this Rule."  RPC 1.9(d).

Under RPC 1.10, lawyers associated with a law firm are prohibited from "knowingly represent[ing] a client when any one of them practicing alone would be prohibited from doing so by RPC 1.7 or RPC 1.9."  Nevertheless, a lawyer's conflict of interest is not imputed if "the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm."  <u>Ibid.</u>

Here, given the clear language of RPC 1.9, the trial court correctly determined "there is no basis to support plaintiff's position that RPC 1.9 is implicated."  Notably, defendants are not former clients of B&C.  Moreover, there is no evidence that B&C's representation of any former clients creates a

13

conflict of interest in their representation of defendants.  Accordingly, because no conflict exists under RPC 1.9, there is no imputed conflict to B&C pursuant to RPC 1.10.

In addition to the inapplicability of RPC 1.9, plaintiff's reliance on Dewey is misplaced.  In Dewey, the plaintiff's firm hired an attorney who previously worked in one of the defendant's law firms for three years on the same case.  109 N.J. at 207.  The defendant moved to disqualify the plaintiff's firm.  Id. at 208.  Weighing the disqualifying imputed conflict against the client's "interest in being represented by counsel of her choice," the Court ordered the attorney to continue representation notwithstanding the ethics violation.  Id. at 218-19.  The Court explained that if finding an RPC violation ended the inquiry, it "would be constrained to order the [law firm's] disqualification . . . .  However, . . . a motion for disqualification calls for us to balance competing interests, weighing the 'need to maintain the highest standards of the profession' against 'a client's right freely to choose his [or her] counsel.'"  Id. at 218 (quoting Gov't of India v. Cook Indus., Inc., 569 F.2d 737, 739 (2d. Cir. 1978)).

Unlike Dewey, plaintiff provides no evidence that Tambussi or any members of B&C are "side-switching" attorneys.  That is, none of the attorneys at B&C initially represented plaintiff and then were subsequently

14

employed by B&C to represent defendants. Moreover, the 2004 amendments to the RPCs abolished the "appearance of impropriety" factor that <u>Dewey</u>, 109 N.J. at 214-16, applied to find a conflict of interest under RPC 1.9. <u>Trupos</u>, 201 N.J. at 464 (citing <u>In re Sup. Ct. Advisory Comm. on Pro. Ethics Op. No. 697</u>, 188 N.J. 549, 552 (2006)).

Accordingly, the trial court properly rejected plaintiff's reliance on <u>Dewey</u> and its principles concerning conflicts of interest with former clients. Therefore, given B&C's representation of defendants does not conflict with the interests of any former client, neither RPC 1.9 nor RPC 1.10 requires the disqualification of the firm.

### C.

Plaintiff next argues that public entities cannot waive conflicts under RPC 1.7(b)(1), assuming a conflict exists under RPC 1.7(a). Plaintiff also notes the indictment references B&C and an unnamed partner, which implies the law firm participated in Tambussi's alleged wrongdoing. In contrast, defendants contend no conflict of interest exists under RPC 1.7 because the Tambussi indictment does not involve B&C or its clients, and there is no significant risk that B&C's representation of defendants will be materially limited.

15

RPC 1.7(a) prohibits lawyers from representing a client "if the representation involves a concurrent conflict of interest." A concurrent conflict of interest arises when:

> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer.
>
> [RPC 1.7(a)(1)-(2).]

Thus, "RPC 1.7 reflects 'the fundamental understanding that an attorney will give complete and undivided loyalty to the client [and] should be able to advise the client in such a way as to protect the client's interests, utilizing his professional training, ability and judgment to the utmost.'" J.G. Ries & Sons, Inc. v. Spectraserv, Inc., 384 N.J. Super. 216, 223 (App. Div. 2006) (internal quotation marks omitted) (alteration in original) (quoting In re S.G., 175 N.J. 132, 139 (2003)). Moreover, unlike private clients, a public entity cannot waive a conflict. RPC 1.7(b)(1).

RPC 1.7(a)(1) prohibits a lawyer from representing a client in litigation that is adverse to another client. Comando v. Nugiel, 436 N.J. Super. 203, 214 (App. Div. 2014). A concurrent conflict of interest is inherent where counsel engages in "dual representation" of clients with adverse interests to each other.

Baldasarre v. Butler, 132 N.J. 278, 295-96 (1993).  For instance, the Court in Baldasarre prohibited an attorney from representing both the buyer and seller in a commercial real estate transaction.  Ibid.  We have noted an attorney should not represent the driver and passenger of a vehicle in a suit against the driver of another vehicle unless there is a legal bar to the passenger suing the driver.  McDaniel v. Man Wai Lee, 419 N.J. Super. 482, 497 (App. Div. 2011).  Otherwise, a conflict of interest would arise "if a crossclaim or counterclaim is made by the other driver."  Ibid.  No such conflict has been established here.

Under RPC 1.7(a)(1), Tambussi's indictment does not render B&C's representation of any one defendant to be "directly adverse" to a co-defendant.  Notably, plaintiff fails to identify any conflict either among defendants themselves or between defendants and B&C.  Moreover, plaintiff does not indicate how the indictment involving an entirely different matter would somehow create a conflict for B&C in representing defendants in an unrelated civil action involving an alleged CEPA violation and breach of contract.  There is no indication defendants here are adverse to each other.  Rather, it appears their interests are aligned in defending against plaintiff's claims.

Likewise, there is no imputed conflict under RPC 1.10 based on RPC 1.7(a)(2).  The mere possibility that a potential conflict of interest could arise at a future date does not preclude concurrent representation under RPC

17

1.7(a)(2). "[T]he possibility of a conflict of interest engenders a duty of full disclosure and disqualification <u>if an actual conflict occurs</u>." <u>Sears Mortg. Corp. v. Rose</u>, 134 N.J. 326, 343 (1993) (emphasis added). Hence, "there must be 'a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities or interests.'" <u>In re Op. No. 17-2012 of Advisory Comm. on Pro. Ethics</u>, 220 N.J. 468, 478 (2014) (quoting <u>Model Rules of Prof. Conduct</u>, cmt. 8 on <u>R.</u> 1.7 (2013)). Plaintiff fails to explain how the indictment of Tambussi interferes with B&C's independent professional judgment in pursuing appropriate action on behalf of their clients in this matter.

Plaintiff's argument presupposes Tambussi in fact had a conflict based on his indictment. However, we need not reach that issue because even if we assume, for the purposes of this appeal, he had a conflict under RPC 1.7(a)(2) based on "there [being] a substantial risk that the representation of one or more clients will be materially limited . . . by a personal interest of the lawyer," that does not end the inquiry. A finding that Tambussi had a conflict based on his "personal interest," in turn, requires us to consider whether his purported conflict under RPC 1.7 is imputed to B&C under RPC 1.10. Assuming a conflict exists for Tambussi under RPC 1.7(a)(2) because of a personal interest

18

as a result of the indictment, there would be no imputed conflict to B&C under RPC 1.10 because no conflict is imputed when the purported conflict is "based on a personal interest of the prohibited lawyer," provided the personal interest "does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm." Plaintiff has made no such showing here.

Plaintiff also does not explain how or why B&C "might be tempted to favor one client over another." There is no indication B&C's representation of any particular defendant would be adverse to another client or that B&C's representation would be materially limited by the representation of another client or former client under RPC 1.7. There is also no suggestion B&C represented a client in the same or substantially related matter whose interests are materially adverse to the interests of defendants here.

As the trial court stated, the record "does not cast any doubt" on defense counsels' ability to zealously advocate for their clients. Therefore, no conflict exists under RPC 1.7(a)(2) that would materially limit defense counsels' ability to advocate for their clients and require B&C's disqualification. Moreover, because we conclude there was no conflict under RPC 1.7, there is also no imputed conflict as to B&C under RPC 1.10. Although the State cannot waive

19

conflicts under RPC 1.7(b)(1), because we have concluded there is no such conflict to waive, the trial court did not err.

Based on the foregoing, we conclude plaintiff has not met her burden in establishing that B&C violated the AG Guidelines or has a conflict of interest under RPC 1.7, RPC 1.9, or RPC 1.10. Accordingly, we affirm the trial court's denial of plaintiff's motion to disqualify B&C.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0108-24